IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

AMANDA BERRY and A'CIRE
NEWBY,

      Plaintiffs,

      v.

THE GREAT AMERICAN DREAM
INC., d/b/a PIN UPS,

      Defendant.

CIVIL ACTION FILE NO.

1:13-CV-03297-TWT-GGB

## NON-FINAL REPORT AND RECOMMENDATION

## ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Amanda Berry and A'Cire Newby ("Plaintiffs") worked as entertainers (dancers) at Pin Ups, an adult entertainment nightclub. Plaintiffs seek damages for alleged violations of the minimum wage and overtime wage requirements of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). Plaintiff Berry also asserts a cause of action for pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k) ("PDA").

This matter is before the Court on Plaintiffs' Motion for Partial Summary Judgment [Doc. 41]. For the reasons stated below, I recommend that Plaintiffs' motion be granted.

## I.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant carries its burden by showing the court that there is "an absence of evidence to support the nonmoving party's case." Celotex v. Catrett, 477 U.S. 317, 325 (1986).

"Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The nonmovant is then required "to go beyond the pleadings" and to present competent evidence in the form of affidavits, answers to interrogatories, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324; Fed. R. Civ. P. 56(c). "Mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment." Bald Mountain Park, Ltd. v. Oliver, 863 F.2d 1560, 1563 (11th Cir. 1989).

Federal Rule 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which he will bear the burden of proof at trial. Celotex, 477 U.S. at 322. In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. Id. at 322-23.

In deciding a motion for summary judgment, the Court must view all evidence and draw any factual inferences in the light most favorable to the nonmoving party. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). But "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The requirement to avoid summary judgment is that there be no "*genuine* issue of *material* fact." Id. at 248 (italics in original). Resolving all doubts in favor of the nonmoving party, the Court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Id. at 252.

A party may move for summary judgment on a part of a claim or defense. Fed. R. Civ. P. 56(a). As the Eleventh Circuit has stated:

> A[n] ... order granting partial summary judgment from which no immediate appeal lies is merged into the final judgment and reviewable on appeal from that final judgment. ... An order granting [summary] judgment on certain issues is a judgment on those issues. It forecloses further dispute on those issues at the trial stage. An order denying a motion for partial summary judgment, on the other hand, is merely a judge's determination that genuine issues of material fact exist. It is not a judgment, and does not foreclose trial on the issues on which summary judgment was sought.

Lind v. United Parcel Serv., Inc., 254 F.3d 1281, 1284 n.4 (11th Cir. 2001) (quoting Glaros v. H.H. Robertson Co., 797 F.2d 1564, 1573 (Fed. Cir. 1986)) (italics omitted).

## II. **PLAINTIFFS' ARGUMENTS**

Plaintiffs seek partial summary judgment on two issues. First, Plaintiffs assert that they are entitled to summary judgment on the issue of whether Plaintiffs are independent contractors or employees under the FLSA. Plaintiffs argue that this Court in a related case involving current and former adult entertainers at Pin Ups (the same defendant as this case) has already ruled that the plaintiff entertainers were "employees" under the FLSA, rather than independent contractors as Pin Ups claims. See Stevenson v. The Great American Dream, Inc. d/b/a Pin Ups Nightclub, No. 1:12-cv-3359-TWT, 2013 WL 6880921 (N.D. Ga. Dec. 31, 2013). As a result, Plaintiffs argue that Pin Ups is collaterally estopped in this case from re-litigating the question

4

of whether entertainers at Pin Ups are properly classified as independent contractors or employees under the FLSA.

Plaintiffs also contend that they are entitled to summary judgment on Pin Ups' "good faith" affirmative defense under 29 U.S.C. § 259.  29 U.S.C. § 259 provides, in pertinent part, that

> [N]o employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the [FLSA] ... if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in subsection (b) of this section, or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged.

29 U.S.C. § 259(a).  This good faith defense is an objective test that bars actions for violations of the FLSA if the employer establishes "that the act or omission complained of was (1) taken in good faith and (2) was in conformity with and (3) in reliance on a written administrative interpretation by a designated agency." Cole v. Farm Fresh Poultry, Inc., 824 F.2d 923, 926 (11th Cir. 1987).

Pin Ups asserted in its answer that Plaintiffs' claims are barred under 29 U.S.C. § 259 because Pin Ups' actions were "taken in good faith, and in conformity with"

AO 72A
(Rev.8/82)

a 1993 letter from a Department of Labor investigator.  [See Doc. 41-8 at 1-2, letter dated December 27, 1993 from Mary Ziegler, Investigator, U.S. Department of Labor ("1993 letter")].  The 1993 letter listed a number of different ways that adult entertainment clubs may pay their employee dancers and satisfy their minimum and overtime wage obligations to the dancers in compliance with the FLSA.  The letter also emphasized that "the employer's records must accurately reflect the number of hours worked by the employee and the compensation received."  [Id. at 1].

Plaintiffs argue that the 1993 letter upon which Pin Ups relies was written by a [lower level] Department of Labor investigator, and therefore does not constitute a "ruling, approval, or interpretation of the agency," as the FLSA requires; therefore, it cannot form the basis of a good faith defense under § 259.  Plaintiffs assert that even if the 1993 letter could form the basis of a good faith defense, Pin Ups is not entitled to rely on the defense because Pin Ups has failed to act in conformity with the letter's terms.

In Pin Ups' response brief, Pin Ups concedes that it cannot establish a defense to liability under 29 U.S.C. § 259(a) because it did not act in conformity with the 1993 letter by the U.S. Department of Labor, in that Pin Ups has not maintained records that accurately reflect the compensation received by the Plaintiffs.  [Doc. 43 at 3].

As it appears that Pin Ups is no longer asserting a good faith affirmative defense to liability under 29 U.S.C. § 259(a), I RECOMMEND that Plaintiffs' motion for partial summary judgment on this issue be GRANTED.

## III.  FACTS

In light of the foregoing summary judgment standard, the Court finds the following facts for the purpose of resolving Plaintiffs' motion for partial summary judgment on the issue of whether Plaintiffs are independent contractors or employees under the FLSA.

### *Pin Ups' Business*

Pin Ups is an adult entertainment club that features nude dancers ("entertainers").  [Doc. 41-3, Pls.' Stmt. of Mat. Facts ("PSMF"), ¶ 1].  Pin Ups' primary focus is featuring entertainers that take off their clothes and dance for customers.  According to Pin Ups, its entertainers have the most important job in the organization.  Pin Ups classifies all of its entertainers as independent contractors, and does not pay them any wages whatsoever.  The only payments that the entertainers receive are handed to them by customers.  [Id. ¶¶ 2-6, 26].

AO 72A
(Rev.8/82)

Besides entertainers, Pin Ups employs managers, house moms, bartenders, waitresses, cashiers, security staff, and office personnel. [Id. ¶ 7]. Pin Ups pays these employees either an hourly wage or a salary. [Id. ¶ 8].

To keep track of entertainers' hours, Pin Ups requires entertainers to sign in when they arrive at the club, and sign out on a breathalyzer report when they leave the club. [Id. ¶ 16]. The door employee at the club (not the entertainers) keeps track of the shifts that entertainers work on what are called "Daily Dancer Logs," which do not reflect the actual hours worked, but rather the shift for which the entertainer was scheduled at the club. [Id. ¶¶ 17-20]. It is undisputed that Pin Ups did not maintain complete or accurate records concerning Plaintiffs' daily compensation, hours worked, or tips received. [Id. ¶¶ 19, 23; Doc. 44 at 3 ¶¶ 19, 23].

Plaintiff Berry worked as an entertainer at Pin Ups from December 19, 2011 through February 17, 2013, and Plaintiff Newby worked there from early 2009 until around November 2012. [Compl. ¶¶ 7-8; Doc. 41-10 at 6, Newby Dep. at 14-15].

### *Pin Ups' Policies and Procedures*

In order to work at Pin Ups, entertainers must agree to abide by the company's policies and procedures. Pin Ups enforces its policies through its managers, security staff, and house moms. [PSMF ¶¶ 27-28]. Managers are authorized to settle disputes

between customers and entertainers and to ask entertainers to leave the premises if they violate Pin Ups' policies. [Id. ¶¶ 29-31]. Managers and house moms are also authorized to reprimand entertainers and resolve disputes about tips earned and tip sharing by the entertainers. Repeated violations of Pin Ups' rules may lead to an entertainer being banned from dancing at Pin Ups. [Id. ¶¶ 32-34]. The club maintains a "fired list" of entertainers that it has fired for violating Pin Ups' policies. [Id. ¶ 35].

Entertainers are required to pay numerous fees to Pin Ups. When an entertainer arrives at Pin Ups, she is required to pay a fee in order to work, which is known as an "entry fee," "rental fee," or "bar fee." [Id. ¶¶ 39-40]. The club requires dancers to pay a higher rental fee to dance during busier times at the club. An additional fee is required to work the late shift. Pin Ups designates what days of the week are "slow days," and requires that entertainers work at least one slow day per week. [Id. ¶¶ 36, 41-42]. If an entertainer chooses not to work on a slow day during a given week, Pin Ups requires her to pay an extra $20 fee. If an entertainer leaves before her designated shift ends, she must also pay a "leave early fee" of $20. [Id. ¶¶ 36-38]. For each shift worked, an entertainer is also required to pay a DJ fee and a house mom fee. [Id. ¶¶ 44-45]. At the end of each shift, Pin Ups requires entertainers to take a breathalyzer test and charges them $1.00 for the straw required to take the test. If an

entertainer refuses to take the breathalyzer test, she cannot return to Pin Ups. [Id. ¶¶ 66-67].

In accordance with Pin Ups' fee policies, Plaintiffs paid rental fees, late shift fees, house mom fees and DJ fees for each shift that they worked at Pin Ups. As a result, there were many nights that Plaintiff Berry left the club without making money and actually owed Pin Ups money due to the fees that it charged its entertainers. [Id. ¶ 46]. An entertainer who fails to pay the required fees may be banned from working at the club. [Id. ¶ 47].

### Conduct Rules

Pin Ups imposed rules and requirements on how entertainers must conduct themselves while working. Pin Ups also exercised control over what entertainers were allowed to wear when they arrived for their shift and how they appeared when performing at the club. If an entertainer showed up for work in a manner that management deemed unpresentable, management had the discretion to prohibit her from entering the club to work. [Id. ¶ 51]. The house mom also checked the entertainer's appearance and dress prior to her entrance from the dressing room to the main club floor. [Id. ¶¶ 48-50].

AO 72A
(Rev.8/82)

Entertainers were required to be on the floor within 30 minutes of arriving at the club. There are two stages at Pin Ups, a main stage in the center of the room and a VIP room off to the side. The order in which entertainers performed on stage was determined by the order in which they signed in when arriving. The DJ called the entertainers to the stage in that order. Pin Ups required that entertainers perform on stage when the DJ called their name unless the entertainer was working in the VIP room. If an entertainer failed to appear on stage or refused to perform when her name was called, a manager could send her home. [Id. ¶¶ 52-56]. If an entertainer left the stage before the song that was playing ended, Pin Ups could send the entertainer home or fire her. [Id. ¶ 58].

When dancing on stage, entertainers receive cash tips from customers either handed to them, affixed to them, or placed on the stage. Pin Ups required that entertainers who shared the stage during a given stage set split all tips evenly. [Id. ¶ 59]. If a dispute arose between entertainers about how much money belonged to each, the house mom and managers would resolve the dispute. [Id. ¶ 60].

In addition to earning tips on stage, entertainers earned tips and/or service charges by performing for customers privately, either through table dances or in the

11

VIP room.  [Id. ¶ 61].  Pin Ups set the fees that the entertainers could charge for table dances and VIP room entertainment.

Entertainers were subject to Pin Ups' conduct rules in the VIP area as well as when they were in the rest of the club.  If managers or security determined that an entertainer was not performing appropriately, they were authorized to send the entertainer home.  [Id. ¶¶ 62- 65].  Pin Ups prohibited entertainers from: (1) bringing in outside food and required them to purchase all food and beverages from Pin Ups; (2) parking in certain parking lots; (3) bringing in unapproved medication; and (4) using designated bathrooms.  [Id. ¶ 70].  Pin Ups also prohibited entertainers from leaving the premises with anyone after the entertainer's shift ended, including leaving with a boyfriend, girlfriend, brother, sister, mother, or father.  [Id. ¶ 68].

### *Overhead Costs*

Pin Ups bears the vast majority of the overhead costs for the business, including food and beverage costs, marketing, advertising, furniture, maintenance services, janitorial services, valet parking services, and all wages for waitresses, bartenders, kitchen staff, security, house moms, managers, and office staff.  [Id. ¶ 71].  Pin Ups controls all marketing and advertising for the business, admission pricing, customer

12

volume, food prices, beverage prices, and how much entertainers can charge for dances.  [Id. ¶¶ 72-73].

### *No Particular Skills Required*

Pin Ups does not have any formal recruitment process, nor does it check whether entertainers have past experience in adult dancing before hiring them.  Pin Ups does not provide any training or performance evaluations for its entertainers.  Both plaintiffs were able to work at Pin Ups merely by showing up and showing that they had adult entertainment permits.  [Id. ¶¶ 76-77].

Entertainers at Pin Ups choose and pay for their own costumes, shoes, and cosmetics, and are free to work for other clubs or elsewhere during their tenure with Pin Ups. [Doc. 45, Def.'s Stmt. of Add'l Mat. Facts, citing Newby Dep. at 17-20, 24-25, 86-87; Berry Dep. at 65, 111, 163-166].

## IV.  DISCUSSION

Plaintiffs allege that at all relevant times to this action, Pin Ups was their "employer" and Plaintiffs were "employees" within the meaning of 29 U.S.C. § 203(d), subject to the FLSA.  Pin Ups insists that Plaintiffs were properly classified as independent contractors.

The FLSA establishes minimum wage and maximum hour requirements, and overtime pay, equal pay, recordkeeping, and child labor standards affecting full-time and part-time workers in the private sector and in federal, state, and local governments. The act was intended by Congress to protect all covered employees from substandard wages and excessive hours. Foremost Dairies, Inc. v. Wirtz, 381 F.2d 653, 654 (5th Cir. 1967).[1] To state a valid claim under the FLSA, the plaintiff must allege and show that her employer failed to pay "overtime compensation and/or minimum wages to covered employees ...." Sec'y of Labor v. Labbe, 319 F. App'x 761, 762 (11th Cir. 2008); Maya v. Master Rest. Developer, LLC, No. 09-23408-CIV, 2011 WL 1336468, at *2 (S.D. Fla. Mar. 24, 2011).

The FLSA's overtime and minimum wage protections extend only to "employees," not independent contractors. See Scantland v. Jeffry Knight, Inc., 721 F.3d 1308, 1311 (11th Cir. 2013). The statutory definition of "employee" in the FLSA, however, provides little guidance. See Rutherford Food Corp. v. McComb, 331 U.S. 722, 728 (1947) ("[T]here is in the Fair Labor Standards Act no definition that solves problems as to the limits of the employer-employee relationship under the

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Act."). "Employee" is defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). "To employ" is defined as "to suffer or permit to work." Id. § 203(g).

To determine whether a plaintiff falls into the category of covered "employee" or exempted "independent contractor," the Court looks to the "economic reality of the relationship between the alleged employee and alleged employer." Scantland, 721 F.3d at 1311 (internal quotation marks omitted). The inquiry focuses on the level of economic dependence. Id. at 1311-12. "[T]he final and determinative question must be whether the ... personnel are so dependent upon the business with which they are connected that they come within the protection of the FLSA or are sufficiently independent to lie outside its ambit." Id. (quoting Usery v. Pilgrim Equip. Co., Inc., 527 F.2d 1308, 1311-12 (5th Cir. 1976)).

The Court may consider several factors, such as (1) degree of control, (2) opportunity for profit or loss, (3) investment in equipment or additional personnel required, (4) whether special skills are required, (5) duration of the working relationship, and (6) the extent to which the service is integral to the alleged employer's business. See Scantland, 721 F.3d at 1311-12. "[T]hese six factors are not exclusive and no single factor is dominant." Id. at 1312. The Court must assess the

AO 72A
(Rev.8/82)

facts relevant to these factors "through the lens of 'economic dependence' and whether they are more analogous to the 'usual path' of an employee or an independent contractor." Id. Whether the Plaintiffs are "employees" under the FLSA is a question of law for the Court. See Antenor v. D&S Farms, 88 F.3d 925, 929 (11th Cir. 1996); Patel v. Wargo, 803 F.2d 632, 634 n.1 (11th Cir. 1986).

### *Offensive, Nonmutual Collateral Estoppel*

Plaintiffs argue that offensive, nonmutual collateral estoppel bars Pin Ups from re-litigating the issue of whether entertainers at Pin Ups, including Plaintiffs, were employees or independent contractors. Offensive, nonmutual collateral estoppel is a doctrine under which a defendant is barred from re-litigating an issue based on a decision rendered in a case in which the current plaintiffs were not involved. See Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 331 (1979); Blackburn v. Calhoun, No. 207CV166, 2008 WL 850191, at *27 (N.D. Ala. Mar. 4, 2008), *aff'd*, 296 F. App'x 788 (11th Cir. 2008) ("Offensive collateral estoppel ... is applied when litigant A seeks to prevent litigant B from relitigating issues that litigant B previously litigated against litigant C, not A.").

In order for nonmutual collateral estoppel to apply, the issue currently before the Court (1) must be identical to the one alleged in the prior litigation; (2) the issue must

16

have been actually litigated; and (3) the determination in the prior proceeding must have been a crucial and necessary part of the judgment in the earlier action. <u>A.J. Taft Coal Co. v. Connors</u>, 829 F.2d 1577, 1580 (11th Cir. 1987). Trial courts have broad discretion to determine when offensive collateral estoppel should be applied. <u>Parklane Hosiery Co.</u>, 439 U.S. at 331. The general rule is that in cases where a plaintiff could easily have joined in the earlier action or where the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel. <u>Id.</u>

The record shows that Pin Ups has previously litigated the identical issue being addressed in this case: whether entertainers working at Pin Ups were employees under the FLSA or independent contractors. Pin Ups is the defendant in a separate lawsuit filed against it by two former entertainers, Martisha Stevenson and Elisha Hunter, for alleged violations of the FLSA. <u>See</u> <u>Stevenson v. The Great American Dream, Inc. d/b/a Pin Ups Nightclub</u>, Case No. 1:12-cv-03359-TWT (N.D. Ga.). On September 11, 2013, the <u>Stevenson</u> plaintiffs filed a motion for partial summary judgment on the issue of whether entertainers at Pin Ups should be classified as independent contractors or employees. [PSMF ¶ 78; Case No. 1:12-cv-03359-TWT, Doc. 53]. On December 31, 2013, this Court granted the plaintiffs' motion, and held that the entertainers at

Pin Ups are employees who are entitled to minimum wage and overtime compensation under the FLSA. [PSMF ¶ 80]. In reaching its holding, the Court concluded that: (1) "Pin Ups exercised a significant amount of control over the Plaintiffs;" (2) "Plaintiffs and Pin Ups did not share equally in the opportunities for profit and loss;" (3) "Pin Ups invested far more than the Plaintiffs on necessary personnel and equipment;" (4) "little skill is required;" and (5) "most definitively, Plaintiffs' services were an integral part of Pin Ups' business." [PSMF ¶ 81; Case No. 1:12-cv-03359-TWT, Doc. 81 at 8-12]. Pin Ups concedes that the same Pin Ups policies and procedures that applied to the plaintiffs in the <u>Stevenson</u> action equally applied to the Plaintiffs in this action. [PSMF ¶ 82; Doc. 44, Def.'s Resp. to PSMF, at 7 ¶ 82].

In response, Pin Ups argues that the Court should decline to allow the offensive use of collateral estoppel in this case because Plaintiffs Berry and Newby were working at Pin Ups when the <u>Stevenson</u> complaint was filed, and the complaint in this case was not filed until after this Court granted the <u>Stevenson</u> plaintiffs' motion to conditionally certify a class. Pin Ups argues that Plaintiffs Berry and Newby could easily have joined the <u>Stevenson</u> case anytime after that case was filed in September 2012. [Doc. 43 at 3].

In reply, Plaintiffs argue that Pin Ups did not provide contact information for potential opt-ins to the <u>Stevenson</u> case until after the complaint in this case was filed. [Doc. 47 at 2-3]. Plaintiffs also point to evidence in the record showing that Plaintiffs were not aware of the <u>Stevenson</u> action prior to filing their complaint. [<u>Id.</u> at 3 (citing Berry Dep. at 24-25 ["Q. Were you aware [prior to filing this lawsuit] that there was litigation going on at Pin Ups related to the dancers' status? A. No."]; Newby Dep. at 78-81, 85-86 [same])]. Pin Ups has failed to provide or point to any evidence that conflicts with or undermines Plaintiffs' sworn testimony, or that creates a genuine issue of material fact as to whether Plaintiffs were aware of the <u>Stevenson</u> litigation before they filed their complaint in this action.

In any event, Pin Ups has failed to provide any reasonable explanation or argument why the application of offensive, nonmutual collateral estoppel would be prejudicial or unfair. <u>See</u> <u>Donovan v. United States Postal Serv.</u>, 530 F. Supp. 894, 900 (D.D.C. 1981) (concluding that where all motions in prior litigation were fully litigated, procedures in prior litigation were fair, and prior court's review was "extensive and of the highest quality ... [i]t is not in the least bit unfair to permit the application of collateral estoppel in the instant case."). In fact, in its four-page response in opposition to Plaintiffs' motion for partial summary judgment on the

independent contractor/employee issue, Pin Ups has not even attempted to support its position that Plaintiffs were properly classified as independent contractors. Instead, Pin Ups merely refers the Court to the losing arguments that it made in <u>Stevenson</u>, arguments that this Court has already rejected. [Doc. 43 at 3].

Under the circumstances, it would be a waste of this Court's resources to re-litigate whether Plaintiffs were employees or independent contractors when they worked at Pin Ups. I see no reason not to apply offensive, nonmutual collateral estoppel to this issue and rule that Pin Ups is barred from re-litigating the issue in the current case.

For the reasons stated above and by this Court in <u>Stevenson</u>, I conclude that Plaintiffs Berry and Newby were "employees" of Pin Ups during their tenures at that club, and that Plaintiffs were therefore subject to the FLSA's overtime and minimum wage protections.[2] Accordingly, I recommend that Plaintiffs' motion for partial summary judgment on this issue be **GRANTED**.

---

[2] <u>See</u> <u>Stevenson</u>, No. 1:12-cv-03359-TWT, Doc. 81 at 8-13 (concluding that five out of the six factors support finding "employee" status). The well-reasoned and detailed analysis in <u>Stevenson</u> and supporting case law citations are equally applicable to this case and therefore are incorporated by reference here.

## V.  CONCLUSION

For the reasons stated above, I **RECOMMEND** that Plaintiffs' Motion for Partial Summary Judgment [Doc. 41] be **GRANTED** in its entirety.

**IT IS SO RECOMMENDED**, this 14th day of October, 2014.

GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)