IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

AMANDA BERRY, et al.,

    Plaintiffs,

      v.

THE GREAT AMERICAN DREAM,
INC. doing business as
Pin Ups,

    Defendant.

CIVIL ACTION FILE
NO. 1:13-CV-3297-TWT

## OPINION AND ORDER

This is an FLSA action. It is before the Court on the Report and
Recommendation [Doc. 58] of the Magistrate Judge recommending denying the
Defendant's Motion for Partial Summary Judgment [Doc. 42]. The Court agrees with
the suggested disposition of the motion. The Defendant's Motion for Partial Summary
Judgment [Doc. 42] is DENIED.

### I. Background

The facts relevant to the Defendant Pin Ups' Motion for Partial Summary
Judgment are as follows. The Defendant operates a facility providing live adult

entertainment.[1] The Defendant hires entertainers based on appearance and dancing ability, and it "has numerous specific image-related requirements for its entertainers in order to make sure the entertainers present the image and service that [the Defendant] sells."[2]

The Plaintiff Amanda Berry was a dancer for the Defendant.[3] In December of 2012, the Plaintiff became pregnant.[4] On February 17, 2013, the Plaintiff's employment with the Defendant was terminated. In particular, on February 17, 2013, the Plaintiff left before her shift was over,[5] and so she was asked to pay the Defendant's standard "leave early fee."[6] The Plaintiff refused to pay the fee, and so she was added to the "Fired List."[7] However, the Plaintiff was informed that she could return if she finally paid the fee.[8] Nevertheless, the Plaintiff claims that her employment was terminated due to her pregnancy in violation of Title VII of the Civil

---

[1]     Def.'s Statement of Facts ¶ 1.

[2]     Id. ¶ 30.

[3]     Id. ¶ 3.

[4]     Id. ¶ 54.

[5]     Id. ¶ 65.

[6]     Id. ¶ 67.

[7]     Id. ¶¶ 67-68.

[8]     Id. ¶ 70.

Rights Act and the Pregnancy Discrimination Act. To be sure, the Defendant has no official, written policy concerning pregnant dancers,[9] and many entertainers have worked for the Defendant while pregnant.[10] However, the Plaintiff testified that she was informed that she could not work for the Defendant because she was pregnant.[11]

The Defendant moved for summary judgment on the Plaintiff's discriminatory discharge claim. In its Motion, the Defendant did not argue that the Plaintiff was discharged for legitimate, non-discriminatory reasons. The Defendant instead argued that, assuming the Plaintiff was indeed discharged due to her pregnancy, the discharge was justified under the "bona fide occupational qualification" exception under Title VII. In support, the Defendant claims that "sex appeal" is a job requirement for working at its establishment, and that this requirement is integral to its business. The Magistrate Judge reviewed the parties' briefs and related submissions, and has recommended that the Defendant's Motion for Partial Summary Judgment be denied.

---

[9]   Id. ¶ 36.

[10]   Id. ¶¶ 49-50.

[11]   Id. ¶ 58.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[12] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[13] The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.[14] The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.[15] A "mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[16]

## III. Discussion

Under Title VII of the Civil Rights Act, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against

---

[12]   FED. R. CIV. P. 56(c).

[13]   Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

[14]   Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

[15]   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

[16]   Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir.1990).

any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."[17] The Pregnancy Discrimination Act ("PDA") – which amended Title VII – defines the term "'because of sex' . . . [to] include . . . because of or on the basis of pregnancy, childbirth, or related medical conditions."[18] Thus, "[r]ather than introducing new substantive provisions protecting the rights of pregnant women, the PDA brought discrimination on the basis of pregnancy within the existing statutory framework prohibiting sex-based discrimination."[19]

Under Title VII, however, "an employer may discriminate on the basis of . . . sex . . . in those certain instances where . . . sex . . . is a bona fide occupational qualification [("BFOQ")] reasonably necessary to the normal operation of that particular business or enterprise."[20] The BFOQ exception recognizes that "classifications based on . . . sex . . . may sometimes serve as a necessary proxy for

---

[17]     42 U.S.C. § 2000e-2(a).

[18]     42 U.S.C. § 2000e(k).

[19]     Armstrong v. Flowers Hosp., Inc., 33 F.3d 1308, 1312 (11th Cir. 1994).

[20]     International Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc., 499 U.S. 187, 200 (1991) (citing 42 U.S.C. § 2000e-2(e)(1)).

[a] neutral [job] qualification[] essential to the employer's business."[21] However, to support a BFOQ defense, the "job qualification must relate to the 'essence,' . . . or to the 'central mission of the employer's business.'"[22] At bottom, to establish a BFOQ defense, the Defendant must satisfy two elements. The Defendant must show that: (1) the sex-based qualification sufficiently "relate[s] to [the] ability to perform [a] dut[y] of the job,"[23] and (2) the particular duty goes to the essence of the Defendant's business.[24] The Plaintiff does not challenge the second element. She does not dispute that "sex appeal" is essential to the Defendant's business. She argues, however, that a dancer's pregnancy-status is not sufficiently related to that job requirement because pregnant women may still possess adequate sex appeal. Consequently, the Plaintiff argues, the Defendant must judge each pregnant dancer on an individual basis to determine if she has the requisite sex appeal, rather than dismissing pregnant dancers simply because they are pregnant.

Due to the Defendant's lack of evidence on this issue, there is a genuine issue of fact as to whether a dancer's pregnancy-status is sufficiently related to her sex

---

[21]     Western Air Lines, Inc. v. Criswell, 472 U.S. 400, 411 (1985).

[22]     International Union, 499 U.S. at 203.

[23]     Id. at 204.

[24]     Id. at 203; and cf. Western Air Lines, 472 U.S. at 412-15 (utilized the two-part inquiry when assessing a BFOQ defense against an ADEA claim).

appeal. Consequently, the Defendant is not entitled to judgment as a matter of law based upon its BFOQ defense. In responding to the Defendant's Motion, the Plaintiff referred to the testimony of two of the Defendant's managers: Angela Sheffield and Kelly Campbell. Both testified that many clients often prefer (and request) dancers with "thicker" bodies.[25] Additionally, Sheffield testified that when a dancer becomes pregnant, she is generally not terminated, but rather asked to dance on the floor instead of on stage.[26] In fact, Sheffield testified that one dancer continued her employment up until she was eight months pregnant.[27] Conversely, in support of its Motion, the Defendant submits no evidence indicating that a dancer necessarily lacks the requisite "sex appeal" by virtue of her pregnancy. Indeed, in its Statement of Material Facts, the Defendant actually referred to Sheffield's testimony where she noted that "each individual's body is unique and has a different appearance under different circumstances, such that some may be able to meet Pin Ups' standards of sex appeal at a given time (e.g., during pregnancy) while others may not be able to do so

---

[25]     Sheffield Dep., at 53-56; Campbell Dep., at 144-15.

[26]     Sheffield Dep., at 40.

[27]     Sheffield Dep., at 47.

in the same circumstances."[28] Accordingly, in this case, there is a genuine issue of fact as to whether a dancer's pregnancy-status is a proxy for "sex appeal."

In response, the Defendant first argues that "sex appeal" may be a BFOQ.[29] Technically, this is incorrect. For the Defendant to prevail on a BFOQ defense, it must establish that a particular sex – or, due to the Pregnancy Discrimination Act, a particular pregnancy-status – is *itself* a BFOQ. The statutory text makes this much clear: "it shall not be . . . unlawful . . . to . . . employ employees . . . on the basis of . . . sex . . . in those certain instances where . . . *sex . . . is a bona fide occupational qualification*."[30] Indeed, even the U.S. Supreme Court made clear that "the bfoq exception was . . . meant to be an *extremely narrow* exception."[31] However, although "sex appeal" may not be a BFOQ,  it may be a particular *job requirement* whose connection to a dancer's pregnancy-status renders the latter to be a BFOQ. The Supreme Court case of <u>Western Air Lines, Inc. v. Criswell</u>[32] may help illustrate this distinction. There, the defendant Western required its flight engineers to retire at the

---

[28]    Def.'s Statement of Facts ¶ 51.

[29]    Def.'s Objections to R&R, at 5.

[30]    42 U.S.C. § 2000e-2(e).

[31]    <u>Dothard v. Rawlinson</u>, 433 U.S. 321, 334 (1977) (emphasis added).

[32]    472 U.S. 400 (1985).

age of sixty.[33] The plaintiffs brought suit under the Age Discrimination in Employment Act,[34] which includes a BFOQ provision similar to that found in Title VII.[35] Western defended this age limit as a BFOQ by arguing that it was necessary to the "safe operation of the airline."[36] In particular, Western argued that the age limit ensured that its flight engineers had "a low risk of incapacitation or psychological and physiological deterioration."[37] Although it was clear that "good health" was a job requirement essential to Western's business – the plaintiffs did not even attempt to argue otherwise[38] – the BFOQ defense failed because there was an inadequate nexus between "good health" and the age limit. Specifically, because there were many flight engineers over the age of sixty that were in good health, and because Western could conduct individual health assessments to determine which ones were not, the Supreme

---

[33]    Id. at 402.

[34]    See id. at 405-06.

[35]    See id. at 411-12 ("Congress . . . borrow[ed] a concept and statutory language from Title VII . . . and provid[ed] that such classification is lawful 'where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business.'").

[36]    Id. at 406.

[37]    Id. at 418.

[38]    See id. ("[R]espondents have not seriously disputed – nor could they – that the qualification of good health for a vital crew member is reasonably necessary to the essence of the airline's operations.").

Court concluded that Western could not simply rely on a flight engineer's age when making employment decisions.[39] Consequently, in that context, age was not a BFOQ. Likewise, here, even though "sex appeal" may be a valid job requirement, it does not necessarily render "non-pregnancy" to be a BFOQ.

The Defendant then argues that the Plaintiff "was let go because of her lack of sex appeal."[40] But this assertion does not support a BFOQ defense. The Defendant even acknowledged in its Brief that "[a] BFOQ defense *begins* with the assumption that [the Plaintiff's] alleged reason [for the discharge] is the 'real one' . . . and offers a complete defense despite the apparent discrimination."[41] An argument for why the Plaintiff was discharged for another, legitimate reason – e.g., for lack of sex appeal – may be relevant to the issue of whether there was a discriminatory discharge to

---

[39]     See id. at 422-23.

[40]     Def.'s Objections to R&R, at 10.

[41]     Def.'s Objections to R&R, at 4; and see 42 U.S.C. § 2000e-2(e) ("[I]t shall not be an unlawful employment practice . . . to . . . *employ employees . . . on the basis of . . . sex* . . . in those certain instances where . . . sex . . . is a bona fide occupational qualification.") (emphasis added).

begin with.[42] However, the Defendant *only* pursues a BFOQ defense in its Brief, and so the Court's analysis is limited to that issue.[43]

## IV. Conclusion

For these reasons, the Court DENIES the Defendant's Motion for Partial Summary Judgment [Doc. 42].

SO ORDERED, this 23 day of February, 2015.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

---

[42]     See Armstrong, 33 F.3d at 1313 ("The defendant may . . . articulat[e] a nondiscriminatory reason for its actions.").

[43]     It is worth noting that, in framing its argument as a BFOQ defense, the Defendant made its job harder. If the Defendant had simply argued – as its Brief suggests – that the Plaintiff was terminated for lack of "sex appeal," and not due to her pregnancy itself, the issue of whether pregnant dancers necessarily lack "sex appeal" would be irrelevant. The question would simply be whether the Defendant's stated reason for the termination was its real reason, and the burden would be on the Plaintiff to demonstrate that it was pretext. See Armstrong, 33 F.3d at 1313-14 ("To prevail, the plaintiff must show that the nondiscriminatory reason offered by the defendant is a pretext for discrimination."). Indeed, the Defendant would still prevail even if it felt that the Plaintiff lacked "sex appeal" because of changes to her appearance *caused* by pregnancy. Cf. Armindo v. Padlocker, Inc., 209 F.3d 1319, 1320 (11th Cir. 2000) ("[T]he Pregnancy Discrimination Act . . . is not violated by an employer who fires an employee for excessive absences, *even if those absences were the result of the pregnancy*, unless the employer overlooks the comparable absences of non-pregnant employees.") (emphasis added).